**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES J. SCAMPITILLA,** | ) | **CASE NO. 1:13 cv 1544** |
| | ) | **(RELATED CASE NO. 1:11 cr 282)** |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Respondent. | ) | **AND ORDER** |

On August 8, 2011, Petitioner James J. Scampitilla pled guilty pursuant to a plea agreement to one count of bank robbery, in violation of 18 U.S.C. § 2113(a). On November 9, Judge Dowd sentenced him to 151 months in prison—the low end of the advisory guideline range. Scampitilla appealed to the Sixth Circuit, arguing that Judge Dowd impermissibly participated in the plea negotiations. The Sixth Circuit rejected that argument, finding that Judge Dowd "did not commit error, plain or otherwise . . . ." (Doc. # 37 at 2.)

Scampitilla subsequently filed a motion, pursuant to 28 U.S.C. § 2255, to vacate his sentence. The Court has examined the motion and, for the reasons explained below, has determined that it plainly appears from the motion, the attached exhibit, and the record of the underlying criminal proceeding that Scampitilla is not entitled to relief. RULE 4(B), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS.

Scampitilla presents two grounds for relief. One is the same argument the Sixth Circuit considered and rejected.[1] But a § 2255 motion may not be used to relitigate an issue that was

---

[1] Because the motion involves allegations regarding Judge Dowd's conduct, he decided to recuse himself from the § 2255 motion. (See Doc. # 40.) Thereafter the case was randomly reassigned to me.

raised and considered on direct appeal, absent highly exceptional circumstances, such as an intervening change in the law. Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999). Since no such circumstances are present here, the Sixth Circuit's decision binds this Court.

The second ground for relief is a claim of ineffective assistance of counsel. Scampitilla claims he did not know before pleading guilty that he would be subject to a sentence longer than 97 months (far below the 151 months he actually got) because his lawyer gave him the wrong advise. This argument fails because whether or not his lawyer advised him of the maximum sentence Judge Dowd did so on the record in open court before accepting Scampitilla's plea.

At the change-of-plea hearing, Judge Dowd conducted a thorough colloquoy. He made sure Scampitilla understood that he may be designated a career offender under the U.S. Sentencing Guidelines and that without the career-offender designation his advisory guideline range would be 77 to 96 months but that *with* the career-offender designation it would be 151 to 188 months. (Id. at 14, 16-17.) The record shows that Scampitilla listened to Judge Dowd and understood that he faced a maximum sentence of 188 months. (Id. at 14-17.) Moreover, the written plea agreement, which Scampitilla read and signed before pleading guilty, covered the career-offender issue and its effect on the sentencing guidelines. (Doc. # 24 at 4-5.) Accordingly, Scampitilla cannot show that there is a reasonable probability that, but for his attorney's error (assuming there was one), the outcome of the plea process would have been different. Strickland v. Washington, 466 U.S. 668, 694 (1984); Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012).

Scampitilla makes another argument in support of his ineffective-assistance claim: His attorney's performance was deficient because he failed to review the evidence and discuss it with Scampitilla. Scampitilla contends that his attorney did not have enough time to review the evidence because only one day passed between the arraignment and the status conference on July 28, 2011, during which his lawyer told Judge Dowd that a plea agreement had been reached. Scampitilla claims his attorney "could not have possibly reviewed the discovery in the case in

less than twenty-four hours, and discuss the evidence with his client and the available options and consequences that attached to those options." (Doc. # 39-1 at 5.) But the record tells a different story.

The status conference did, in fact, take place on July 28. But the arraignment took place on June 24—over one *month* (not one day) before. And Scampitilla's attorney did a lot of work during that month. He filed five separate motions seeking an order directing the Government to disclose, among other things, any statements his client made to law enforcement, Brady evidence, the results of any tests conducted by the Government, the name and address of every person the Government has interviewed in connection with the case, every written statement or transcript of such interviews, and any grants or promises of immunity to potential witnesses.

In addition, the lawyer had been in communication with the Government since he entered an appearance. (Doc. # 17 at 2.) Indeed, a week after filing the five motions, on July 18, the Government filed a response stating that it "has provided to the Defendant all of the information in the possession of the United States Attorney's Office to date, [including] materials that the government submits are not required to be produced at this time." (Id.)

And Scampitilla's claim that he was unaware of the evidence the Government had against him rings hollow because on the morning of July 28, several hours before the status conference, the Government filed a document listing the evidence it intended to use against Scampitilla. The list was long: 911 calls from June 15, 2011; Cleveland Police Department radio traffic from June 15, 2011; bank surveillance video; photographs of Scampitilla's apartment and cell phone; Advice of Rights form; FDIC Certificate for Key Bank (the bank Scampitilla robbed); a bank surveillance photograph signed by Scampitilla; his driver's license photo; his statements; a dye pack; an orange baseball cap; grey sweat pants with red dye stains; dark blue sweat shirt with red dye stains; a consent to search form signed by Rose Gabor; a black duffel bag; a scrub brush; and a receipt/check binder with a note inside with red stains. (Doc. # 19 at 2-3.) The Government's lawyer mentioned some of those items during the conference, including the bank surveillance

video and Scampitilla's confession.  Since the evidence was on the record and addressed in open court on July 28, more than a week before Scampitilla pled guilty on August 8, Scampitilla's argument that his lawyer did not have enough time to review the evidence and discuss it with him fails.

Accordingly, the motion (Doc. # 1) is **DENIED** and the case is **DISMISSED**.[2]

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster 8/6/13*
**Dan Aaron Polster**
**United States District Judge**

---

[2] Yesterday, on August 5, the Court ordered the Government to respond to Petitioner's motion to vacate.  That order is hereby vacated.